**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

MAY 22 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MARGARITA ROJAS RAMIREZ, | No. 22-1946 |
| Petitioner, | Agency No. A205-936-572 |
| v. | |
| TODD BLANCHE, Acting Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 24, 2026
Pasadena, California

Before: HIGGINSON, NGUYEN, and BRESS, Circuit Judges.[**]
Dissent by Judge BRESS.

Margarita Rojas Ramirez petitions for review of a decision by the Board of

Immigration Appeals ("BIA") dismissing her appeal of the denial of asylum and

withholding of removal. We have jurisdiction under 8 U.S.C. § 1252. Reviewing

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Stephen A. Higginson, United States Circuit Judge for the Court of Appeals, Fifth Circuit, sitting by designation.

purely legal questions de novo and the BIA's fact-based conclusions for substantial evidence, *see Ruiz v. Bondi*, 163 F.4th 586, 592, 599 (9th Cir. 2025), we grant the petition in part, deny it in part, and remand for further proceedings.

1.  The BIA erred by failing to address relevant evidence that Los Pelones members persecuted Rojas Ramirez based in part on her family membership and that the Mexican government is unable or unwilling to stop them.  We therefore grant the petition for review as to her family-based claims for asylum and withholding of removal and remand for further consideration.[1]

a.  To be eligible for asylum, an applicant must show that a protected ground is "at least one central reason" for the persecution she fears upon removal.[2]  8 U.S.C. § 1158(b)(1)(B)(i).  The BIA found no nexus between Rojas-Ramirez's

---

[1] We do not conclude that Rojas Ramirez established the requisite nexus or that "the record compels the conclusion" that the Mexican government was unable or unwilling to control her family's persecutors.  Dissent at 1.  Rather, the issue is that the BIA failed to address "highly probative record evidence," *Diaz v. Bondi*, 129 F.4th 546, 554 (9th Cir. 2025) (quoting *Flores Molina v. Garland*, 37 F.4th 626, 638 (9th Cir. 2022)), which due process requires, *see Larita-Martinez v. INS*, 220 F.3d 1092, 1095 (9th Cir. 2000).  On remand, the BIA is free to reject Rojas Ramirez's evidence if it provides an explanation that the record supports.

[2] For Rojas Ramirez's family-based claims, we address nexus only as to asylum.  To the extent the BIA concluded that an applicant who fails to establish nexus for an asylum claim "cannot meet the lower burden . . . to establish eligibility for withholding of removal," it erred.  *See Rodriguez-Zuniga v. Garland*, 69 F.4th 1012, 1018 (9th Cir. 2023) ("[I]t is possible that a petitioner who failed to show a sufficient nexus for asylum might nonetheless meet the lower nexus requirement for withholding of removal.").

family-based particular social group and the harm inflicted on her family by Los Pelones members because "the cartel and the family associated with it are known to harm people unrelated to [her], including in surrounding communities." Under our "mixed-motive" case law, however, an asylum applicant "need not show that the protected ground was the *only* reason for persecution." *Garcia v. Wilkinson*, 988 F.3d 1136, 1143 (9th Cir. 2021). "That an unprotected ground," such as property theft, "*also* constitutes a central reason for persecution does *not* bar asylum." *Rodriguez Tornes v. Garland*, 993 F.3d 743, 751 (9th Cir. 2021).

Rojas Ramirez presented substantial evidence that her family membership was a central reason for the persecution. Although she acknowledged that Los Pelones also "harmed other people in the area," Rojas Ramirez testified that Los Pelones burglarized her home and then targeted her family. The relevant incidents occurred after her son retrieved his possessions from the burglars, who were brothers from a neighboring family. The brothers threatened to rape Rojas Ramirez and her daughter because they were upset with her son. After they severely beat her son and Rojas Ramirez informed the brothers' mother that she had reported the crime to the police, the mother threatened Rojas Ramirez: "don't get in trouble with us." There is no evidence that the brothers' mother was part of Los Pelones. The BIA erred by ignoring evidence that animus against Rojas

Ramirez's family motivated the persecution at least in part.[3]  *See Garcia*, 988 F.3d at 1146.

b.  An applicant for asylum and withholding of removal must also show that she faces persecution committed by the foreign government "or by forces that the government [is] unable or unwilling to control."  *Singh v. Bondi*, 161 F.4th 560, 565 (9th Cir. 2025) (quoting *Baghdasaryan v. Holder*, 592 F.3d 1018, 1023 (9th Cir. 2010)).  The BIA concluded that Rojas Ramirez's "subjective belief that authorities either do nothing or require bribes to take action [is] insufficient to show that they would necessarily fail [to] assist [her] in a particular circumstance."

In relying on "instances in which police investigated suspicious activity, and even arrested a cartel suspect," the BIA mischaracterized the record evidence. Rojas Ramirez testified that in 2018, five years after her most recent entry into the United States, the police arrested one member of Los Pelones after he brutally killed a man.  In addition, once, when Los Pelones members raped a nine-year old, the police arrested one of them but let him go after three months.

These two isolated incidents stand in contrast to Rojas Ramirez's consistent statements that the police did nothing in response to her several complaints. "[W]hen an applicant attempts to report persecution to the police or request

---

[3] At oral argument, government counsel stated that the property crimes and threats of rape were "intertwined" and was unable to distinguish mixed-motive case law.

protection from them, the authorities' response (or lack thereof) to such requests may provide powerful evidence with respect to the government's willingness or ability to protect the requestor." *Afriyie v. Holder*, 613 F.3d 924, 931 (9th Cir. 2010), *overruled on other grounds by Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1069–70 (9th Cir. 2017) (en banc). Rojas Ramirez told the asylum officer that the Pelones brothers "also harmed other people in the area and the police never [did] anything to them" in those cases either. "The BIA . . . erred by giving no weight whatever to the government's failure to solve other similar crimes . . . ." *Id.* at 932.

The BIA also ignored Rojas Ramirez's substantial country conditions evidence corroborating her "subjective belief" about police unwillingness to investigate Los Pelones. For example, she submitted news articles reporting that the "underpaid" Mexican police "cannot be trusted" because "[d]rug cartels with massive resources at their disposal have repeatedly managed to infiltrate [them]." A foreign government's "inability to control" a non-state actor is often "proved through documentary evidence, such as country conditions reports," which can be enough for an asylum or withholding applicant to meet her burden. *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1062 (9th Cir. 2017) (en banc) (citing *Gomez-Saballos v. INS*, 79 F.3d 912, 916–17 (9th Cir. 1996)).

The BIA erred by failing to address any of Rojas Ramirez's evidence that the Mexican government is unable or unwilling to control Los Pelones.

2. Substantial evidence supports the BIA's denial of Rojas Ramirez's claims based on race or ethnicity. Although her evidence suggests that indigenous persons in Mexico face discrimination generally, she cites only two examples of extreme conduct involving indigenous persons. The immigration judge acknowledged both incidents, and the record supports the BIA's conclusion that there is no evidence the victims' indigeneity was a causal factor. Because there is "*no* nexus between the harm . . . and the alleged protected ground," the BIA properly denied Rojas Ramirez's indigeneity-based claims for asylum and withholding of removal under either standard, *Singh v. Barr*, 935 F.3d 822, 827 (9th Cir. 2019) (per curiam), and we deny the petition for review as to those claims.

3. Substantial evidence supports the BIA's denial of Rojas Ramirez's claims based on imputed political opinion. An applicant for asylum or withholding of removal "does not have a well-founded fear of persecution" upon removal if she can reasonably "avoid persecution by relocating to another part of the . . . country." 8 C.F.R. § 1208.13(b)(2)(ii). Rojas Ramirez testified that she "wouldn't be scared of" the former politician who threatened her if she moved to a different town. Because he is now a private actor, there is "a presumption that internal relocation

would be reasonable unless the applicant establishes, by a preponderance of the evidence, that it would be unreasonable to relocate." *Id.* § 1208.13(b)(3)(iii). Substantial evidence supports the BIA's conclusion that Rojas Ramirez failed to meet her burden, and we deny the petition for review as to her claims based on imputed political opinion.

**PETITION GRANTED in part and DENIED in part; REMANDED.**

*Rojas Ramirez v. Blanche*, 22-1946

BRESS, Circuit Judge, dissenting:

I agree with the majority that substantial evidence supports the BIA's denial of Rojas Ramirez's asylum and withholding of removal claims based on her ethnicity and imputed political opinion. However, I disagree with the majority that Rojas Ramirez can establish a nexus between her alleged harm and family membership. I also disagree that the record compels the conclusion that the Mexican government was unwilling or unable to control her persecutors. *See Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1028 (9th Cir. 2019) (when applying substantial evidence review, "we must uphold the agency determination unless the evidence compels a contrary conclusion"). While Rojas Ramirez was a victim of unfortunate crime and violence in Mexico, she is not entitled to asylum or withholding of removal under our precedents. The majority errs in regarding a personal dispute between neighbors as providing the basis for immigration relief.[1]

---

[1] I agree with the majority that the BIA erred in its withholding nexus analysis under *Barajas-Romero v. Lynch*, 846 F.3d 351 (9th Cir. 2017), because it did not recognize the lower "a reason" nexus standard for withholding of removal claims. The BIA's error does not affect the resolution of this case under either the majority's analysis or my own. However, in the appropriate case, we should reconsider our problematic precedent on the supposedly lower nexus standard for withholding of removal—a position that is out of step with the majority of circuits and which only the Sixth Circuit has adopted. *Compare Guzman-Vazquez v. Barr*, 959 F.3d 253, 270–74 (6th Cir. 2020), *with id.* at 286–290 (Murphy, J., dissenting); *Pazine v. Garland*, 115 F.4th 53, 69 n.11 (1st Cir. 2024); *Quituizaca v. Garland*, 52 F.4th 103, 111 (2d Cir. 2022);

1

1. Substantial evidence supports the BIA's conclusion that Rojas Ramirez did not establish a nexus between her alleged harm and her family membership. While our case law says that "the family remains the quintessential particular social group," *Rios v. Lynch*, 807 F.3d 1123, 1228 (9th Cir. 2015), there are reasons to question whether statements like this in our cases are too broad. And when that case law is then nevertheless applied to a family that has no special distinctiveness in the relevant society, we must be careful to mind the nexus requirement. Otherwise, violence and threats directed toward family members can too easily be mischaracterized as persecution on the basis of family membership itself, as the majority does here.

Our case law guards against this overextension of the asylum protections. As we have long held, a motive is only a central reason for persecution "if that motive, *standing alone*, would have led the persecutor to harm the applicant." *Parussimova v. Mukasey*, 555 F.3d 734, 741 (9th Cir. 2009) (emphasis added). Accordingly, in the context of an extortion claim, we held that "[w]here the record indicates that the persecutor's actual motivation for threatening a person is to extort money from a third person, the record does not compel finding that the persecutor threatened the

*id.* at 116–20 (Sullivan, J., concurring); *Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 685 n.6 (3d Cir. 2015); *Diaz-Hernandez v. Garland*, 104 F.4th 465, 476–77 (4th Cir. 2024); *Vazquez-Guerra v. Garland*, 7 F.4th 265, 270–71 (5th Cir. 2021); *Durakovic v. Garland*, 101 F.4th 989, 995–96 (8th Cir. 2024).

2

target because of a protected characteristic such as family relation." *Rodriguez-Zuniga v. Garland*, 69 F.4th 1012, 1019 (9th Cir. 2023). In that situation, "the extorted person may be motivated to give the money because they care for their family member, but that doesn't transform the *persecutor's* motivation from money to actual animus against a protected characteristic." *Id.* at 1020. Thus, we concluded that an asylum claim based on family membership could not lie when the persecutors were not "motivated intrinsically by [petitioner's] familial relationship to his mother." *Id.*

Here, it is undisputed that the threats from both the Los Pelones-affiliated brothers and their mother, neighbors of Rojas Ramirez, occurred only after Rojas Ramirez's son retrieved his stolen property from the family's home, and after Rojas Ramirez indicated she had reported the situation to the police. The record indicates that there were no significant problems between the families for twenty years or so, and the other family had never expressed any sort of animus towards Rojas Ramirez's family before this incident. Rojas Ramirez herself testified that the brothers' motives were primarily criminal, as it was "their business to harm people in the town."

The record therefore does not show—much less compel the conclusion—that Rojas Ramirez's neighbors threatened her based on any intrinsic animus against her family. *See Rodriguez-Zuniga*, 69 F.4th at 1019–20. This was a personal dispute

3

between neighbors that turned violent, apparently driven by cartel-related activities. But the mere fact that Rojas Ramirez is a member of her family does not mean that her neighbors harmed her because of that family membership. Instead, this was a situation involving criminal motives and personal retribution, arising from an escalating feud over stolen property. These circumstances are regrettable, but they do not provide the basis for asylum. *See Hussain v. Rosen*, 985 F.3d 634, 649 (9th Cir. 2021) (noting that "generalized crime and violence" in a country "cannot be a basis for granting asylum"); *Molina-Morales v. INS*, 237 F.3d 1048, 1052 (9th Cir. 2001) (noting that "[p]urely personal retribution" is not persecution "on account of" a protected ground).

2. Even if we assume that the BIA's asylum nexus holding was erroneous, the majority further errs in concluding that the record compels the conclusion that the Mexican government was unwilling or unable to control Rojas Ramirez's persecutors. Here, Rojas Ramirez testified that a Los Pelones member who committed murder was arrested, and so was one of the neighboring brothers for allegedly raping a child. Both of these points support the conclusion that the local police had the capacity and willingness to confront and control Los Pelones.

Moreover, the Mexican police appeared to have taken reports from Rojas Ramirez. While it is true that Rojas Ramirez testified that the Mexican police failed to take action afterwards, her testimony does not indicate what exactly she told them

4

or how they responded. *See Doe v. Holder*, 736 F.3d 871, 878 (9th Cir. 2013) (explaining that the petitioner had not met his burden "where [he] failed to provide the police with sufficiently specific information to permit an investigation or an arrest"). Because it is Rojas Ramirez's burden to establish that the Mexican government was unwilling or unable to control her persecutors, the vague and unclear nature of her testimony, coupled with the fact that local police did arrest one of the brothers and a different Los Pelones member, does not compel a finding contrary to the BIA's.

The country conditions evidence cited by the majority does not change this result. While the majority maintains that the country conditions evidence "corroborat[es] [Rojas Ramirez's] 'subjective belief' about police unwillingness to investigate Los Pelones," the country conditions evidence also demonstrates substantial efforts by the Mexican government to control and eliminate cartels and cartel-linked organizations like Los Pelones. As we have held, "[a] country's government is not 'unable or unwilling' to control violent nonstate actors when it demonstrates efforts to subdue said groups." *Hussain*, 985 F.3d at 648. Country conditions evidence that is mixed (at best) cannot compel a conclusion contrary to the agency's.

3. The majority contends that remand is appropriate because the BIA "failed to address highly probative record evidence." But here, the BIA stated that "the

5

evidence does not establish a clear causal connection" between Rojas Ramirez's proposed family-based particular social group and the harms she suffered. The BIA also concluded that Rojas Ramirez had not shown the Mexican government was unable or unwilling to protect her, citing her testimony about "instances in which police investigated suspicious activity, and even arrested a cartel suspect." The BIA is not required to "discuss each piece of evidence submitted," and its reasoning was "sufficient to demonstrate that all evidence was considered." *Garcia v. Holder*, 749 F.3d 785, 792 (9th Cir. 2014) (quotation marks and citation omitted). Regardless, as I have explained, the evidence in this case does not support a finding of nexus or that the Mexican government was not able or willing to protect Rojas Ramirez, so there was no "highly probative" evidence that the BIA could have considered but did not. The majority cannot downplay its decision as merely procedural in nature, as the evidence it claims the BIA supposedly failed to consider would not entitle Rojas Ramirez to relief from removal.

For these reasons, I respectfully dissent.